## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF UTAH

| | |
|---|---|
| FRANKLIN TEMPLETON BANK & TRUST,<br><br><div align="center">Plaintiff,</div><br>v.<br><br>GERALD M. BUTLER, JR. FAMILY TRUST, et al.,<br><br><div align="center">Defendants.</div> | **MEMORANDUM DECISION AND ORDER DENYING DEFENDANTS' MOTIONS TO COMPEL ARBITRATION AND TO STAY PROCEEDINGS PENDING ARBITRATION**<br><br>Case No. 2:15-cv-435-JNP-EJF<br><br>Judge Jill N. Parrish<br>Magistrate Judge Evelyn J. Furse |

Before the court is Defendants National Securities Corporation's ("NSC") and National Asset Management's ("NAM") Motion to Compel Arbitration and to Stay Proceedings Pending Arbitration (Docket 27). The remaining defendants—the Gerald M. Butler, Jr. Family Trust and the Gerald M. Butler, Jr. Marital Trust (collectively the "Trusts"); and Jessica Allen, Geoffrey Butler, James Butler, Georgiana Butler, John Butler, Julie Angerer, Jennifer Guidry, and Gerald Butler III (collectively the "Beneficiaries")—joined NSC's and NAM's motion (Docket 28).

On February 18, 2016, the court held a hearing on Defendants' motions. The court then took the motions under advisement. After careful consideration of the record, relevant law, and the parties' memoranda, the court DENIES Defendants' Motions to Compel Arbitration and to Stay Proceedings Pending Arbitration.

## BACKGROUND

This case involves a dispute regarding Franklin Templeton Bank & Trust's ("FTB&T") actions as directed trustee for the Trusts. In August 2008, the Beneficiaries executed trust agreements for both Trusts. Pursuant to the trust agreements, the Beneficiaries appointed FTB&T as directed trustee and NAM as investment advisor for the Trusts. The trust agreements state that

"only the Investment Advisor, and not FTB&T[,] is the sole fiduciary responsible for the investments" directed by the investment advisor. The trust agreements further provide that "FTB&T is not responsible for any debts, damages, claims, judgments, losses, demands, obligations, causes of action, lawsuits, controversies, deficiencies, penalties, liabilities, costs, expenses or fees incurred as a result of FTB&T's following the direction of the Investment Advisor." Both trust agreements dictate that the "Trustor(s), all beneficiaries of the Trust[s] and the Investment Advisor submit to the jurisdiction of the Courts of the State of Utah as to any matter regarding the Trust[s]." Nowhere do the trust agreements mandate arbitration.

NAM also signed an Agreement of Investment Advisor ("Investment Advisor Agreement") in which NAM agreed to "indemnify, defend and hold harmless the Trust's beneficiaries and FTB&T from any breach of [NAM's] agreements . . . and [NAM's] duties as sole investment fiduciary to the trust." NAM also "agree[d] to submit personally to the jurisdiction of the Courts of Utah as to any matter regarding the Trust[s]." NAM is the only signatory on this agreement. FTB&T did not sign this agreement in either its individual or representative capacity.

FTB&T subsequently signed several agreements on behalf of the Trusts. In November 2008, FTB&T signed, in its capacity as trustee, Trading Authorization Agreements with NSC, a securities broker-dealer. These agreements state that "Arbitration is used to resolve disputes between parties" according "to the arbitration rules of the Financial Industry Regulatory Authority (FINRA)." Similarly, in February 2009, FTB&T signed, in its capacity as trustee, Investment Monitoring Agreements with NAM. These agreements also included an arbitration clause that mandates arbitration for "[a]ny controversy or claim arising out of or relating to this Agreement or breach thereof, or any other matter relating to NAM's [investment advisor

representative's] or [the Trusts'] obligations . . . in accordance with the Rules then in effect of Judicial Arbitration and Mediation Services, Inc." Both the Trading Authorization and Investment Monitoring Agreements contain choice of law provisions stating that the agreements are to be construed under the laws of the State of Washington.

In June 2011, the Beneficiaries removed FTB&T as trustee and fired NAM as investment advisor. Following FTB&T's removal, each of the Beneficiaries signed indemnification and release agreements, in which they agreed to "waive, release and forever discharge FTB&T, individually and as Trustee, from all claims, demands, interests, actions, causes of action, and other rights whatsoever which he has or may have by virtue of the Trust[s], [their] assets, and FTB&T's administration of the Trust[s]." The Beneficiaries also agreed to "indemnify, defend and hold harmless FTB&T, individually and as Trustee, from and against any . . . claims, . . . causes of action, lawsuits, . . . or liabilities which arise or result from or may arise or result from . . . FTB&T's administration of the Trust[s]."

In March 2015, the Trusts filed a claim with FINRA against NAM and NSC, and alleged that NSC's and NAM's agent mismanaged the Trusts' assets. The Trusts also alleged breach of fiduciary duty, breach of contract, and negligence claims against FTB&T. In April 2015, FINRA advised FTB&T that

> [y]ou are not required to arbitrate disputes in the FINRA arbitration forum. In the absence of your voluntary submission to arbitration, FINRA will proceed with this action without your participation and advise claimant(s) to pursue their remedies against you in another forum which does have jurisdiction over the claims against you.

FTB&T did not consent to submit to arbitration in the FINRA action.

On June 18, 2015, FTB&T initiated this action to require Defendants to indemnify and hold harmless FTB&T for any claims, including the FINRA claim, related to the Trusts or the alleged mismanagement of the Trusts' assets. NSC and NAM subsequently filed a Motion to

Compel Arbitration and to Stay Proceedings Pending Arbitration (Docket 27), which the remaining Defendants joined (Docket 28).

## LEGAL STANDARD

Under section 2 of the Federal Arbitration Act ("FAA"), arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C § 2. The Supreme Court has interpreted this provision as embodying a "liberal federal policy favoring arbitration." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)). Thus, when interpreting an arbitration clause in a contract, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone*, 460 U.S. at 24–25.

"But before the Act's heavy hand in favor of arbitration swings into play, the parties themselves must *agree* to have their disputes arbitrated. . . . [E]ven under the FAA it remains a 'fundamental principle' that 'arbitration is a matter of contract,' not something to be foisted on the parties at all costs." *Howard v. Ferrellgas Partners, L.P.*, 748 F.3d 975, 977 (10th Cir. 2014) (quoting *AT&T Mobility*, 563 U.S. at 339); *see also Local 5-857 Paper, Allied-Indus., Chem. & Energy Workers Int'l Union v. Conoco Inc.*, 320 F.3d 1123, 1126 (10th Cir. 2003) ("[A] party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." (quoting *AT & T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 648 (1986))).

"[T]he question 'whether parties have a valid arbitration agreement at all' is a 'gateway matter[]' that is 'presumptively for courts to decide.'" *Bellman v. i3Carbon, LLC*, 563 F. App'x 608, 611–12 (10th Cir. 2014) (quoting *Oxford Health Plans LLC v. Sutter*, 133 S. Ct. 2064, 2068 n.2 (2013)). Whether an arbitration agreement exists "is simply a matter of contract between the

parties." *Walker v. BuildDirect.com Techs., Inc.*, 733 F.3d 1001, 1004 (10th Cir. 2013) (quoting *Avedon Eng'g, Inc. v. Seatex*, 126 F.3d 1279, 1283 (10th Cir. 1997)). Thus, courts "apply ordinary state-law principles that govern the formation of contracts to determine whether a party has agreed to arbitrate a dispute." *Id.* (quoting *Hardin v. First Cash Fin. Servs., Inc.*, 465 F.3d 470, 475 (10th Cir. 2006)).

"[W]hen a court interprets a contract, . . . it applies the law that the parties selected in their contract." *Yavuz v. 61 MM, Ltd.*, 465 F.3d 418, 427–28 (10th Cir. 2006). Here, the court must interpret the agreements containing the arbitration clauses—the Trading Authorization and Investment Monitoring Agreements. Because these agreements contain Washington choice of law provisions, Washington law applies.

## ANALYSIS

The court first addresses Defendants' motions to compel arbitration before turning to Defendants' motions to stay proceedings pending arbitration.

## I.      Motion to Compel Arbitration

In their motion to compel arbitration, Defendants raise two main arguments: first, FTB&T is a signatory to the Trading Authorization and Investment Monitoring Agreements; and second, even if FTB&T is considered to be a nonsignatory to the Trading Authorization and Investment Monitoring Agreements, equitable estoppel requires FTB&T to arbitrate because FTB&T is directly benefiting from these agreements. Defendants raise a third argument in their reply brief, namely, that FTB&T is required to arbitrate as a third party beneficiary of the agreements. Each of these arguments is addressed in turn.

### A.      FTB&T as Signatory to the Arbitration Agreements

Defendants first argue that "FTB&T cannot dispute that it signed both of the agreements

5

containing arbitration provisions and thereby agreed to be bound [by] the respective arbitration provisions." But FTB&T signed the Trading Authorization and Investment Monitoring Agreements in its capacity as trustee—not in its individual capacity. Under Washington law, "[a] nonsignator to an arbitration agreement cannot be compelled to arbitrate." *Satomi Owners Ass'n v. Satomi, LLC*, 225 P.3d 213, 230 (Wash. 2009). Thus, because FTB&T did not sign the agreements in its individual capacity, it is not a signatory to the agreements and cannot be compelled to arbitrate under them.

Despite this, Defendants contend for the first time in their reply brief that "several contracts between the same parties relating to the same matters made as parts of substantially one transaction are to be taken together." Thus, Defendants argue that the Investment Advisor Agreement—in which NAM agreed to indemnify FTB&T—"is part and parcel of the other agreements among the parties, which do contain arbitration provisions." Because of this, Defendants argue FTB&T "is a party to the agreements containing the arbitration provisions."

The court notes that it generally does not "consider arguments raised for the first time in a reply brief." *United States v. Mora*, 293 F.3d 1213, 1216 (10th Cir. 2002); *see* DUCivR 7-1(b)(2) ("Reply memoranda must be limited to . . . rebuttal of matters raised in the memorandum opposing the motion."). But even upon considering Defendants' argument, the court holds that Defendants cannot overcome the hurdle that "[a] nonsignator to an arbitration agreement cannot be compelled to arbitrate." *Satomi Owners*, 225 P.3d at 230. FTB&T did not sign the Investment Advisor Agreement, either in its individual or representative capacity. Thus, even if the Investment Advisor Agreement were considered "part and parcel" of the parties' other agreements, because FTB&T is a nonsignatory to the agreements on which Defendants rely, it cannot be compelled to arbitrate.

B.     **Equitable Estoppel**

Defendants next argue that equitable estoppel requires FTB&T to arbitrate its claims

because FTB&T is exploiting the Trading Authorization and Investment Monitoring Agreements

by seeking a declaration of its indemnification rights against NSC and NAM. Conversely,

FTB&T argues that FTB&T is not exploiting the agreements mandating arbitration because

FTB&T's claims do not rely on these agreements.

Under Washington law, equitable estoppel "precludes a party from claiming the benefits

of a contract while simultaneously attempting to avoid the burdens that contract imposes."

*Townsend v. Quadrant Corp.*, 268 P.3d 917, 922 (Wash. 2012) (quoting *Mundi v. Union Sec.

Life Ins. Co.*, 555 F.3d 1042, 1045–46 (9th Cir. 2009)). "In this regard, equitable estoppel may

require a nonsignatory to arbitrate a claim if that person, despite never having signed the

agreement, 'knowingly exploits' the contract in which the arbitration agreement is contained."

*Id.* (quoting *Mundi*, 555 F.3d at 1046).

For example, in *Townsend*, the plaintiffs were seeking to enforce the terms of an

agreement that mandated arbitration while at the same time "seek[ing] to avoid the burden of

arbitration imposed by [the agreement]." *Id.* The Washington Supreme Court held that because

the plaintiffs were "knowingly exploiting the terms of the contract," they were precluded from

"avoid[ing] the arbitration clause within it." *Id.*

Here, FTB&T's claims are based on Utah Code Ann. § 75-7-906, the trust agreements,

the Investment Advisor Agreement, and the Indemnification and Release Agreements. FTB&T is

not seeking to enforce the terms of the Trading Authorization or Investment Monitoring

Agreements. Although Defendants argue that these agreements relate to FTB&T's

indemnification claims, FTB&T is not relying on the terms of *these* agreements in order to bring

its indemnification claims. Thus, FTB&T is not seeking to "exploit[] the contract in which the arbitration agreement is contained." *Id.* FTB&T therefore cannot be compelled on grounds of equitable estoppel to arbitrate as a nonsignatory. *See, e.g.*, *Comer v. Micor, Inc.*, 436 F.3d 1098, 1102 (9th Cir. 2006) (holding that a plaintiff who brought claims that were not based on agreements containing arbitration clauses did not "knowingly exploit" the agreements containing the arbitration clauses).

### C.      Third Party Beneficiary

Finally, Defendants argue for the first time in their reply brief that FTB&T is required to arbitrate as a third party beneficiary of the Trading Authorization and Investment Monitoring Agreements. Although the court disfavors arguments raised for the first time in a reply brief, *see* DUCivR 7-1(b)(2), the court nonetheless addresses Defendants' argument.

Defendants argue that FTB&T's opposition "clearly establishes that, at minimum, [FTB&T] was a third party beneficiary of the subject contracts." Namely, Defendants contend that FTB&T's "indemnity claims are expressly based on agreements among the other parties," and that as a result, FTB&T "is undisputedly a third party beneficiary [of] the contracts governing the subject transaction."

"Nonsignatories can . . . seek to enforce arbitration agreements as third party beneficiaries." *Satomi Owners*, 225 P.3d at 230 n.22. "A third party beneficiary contract exists when the contracting parties, at the time they enter into the contract, intend that the promisor will assume a direct obligation to the claimed beneficiary." *Warner v. Design & Build Homes, Inc.*, 114 P.3d 664, 670 (Wash. Ct. App. 2005) (citing *Postlewait Constr., Inc. v. Great Am. Ins. Cos.*, 720 P.2d 805, 806–807 (Wash. 1986)). "An incidental, indirect, or inconsequential benefit to a third party is insufficient to demonstrate an intent to create a contract directly obligating the

8

promisor to perform a duty to a third party." *Id.* (citing *Del Guzzi Constr. Co. v. Global Nw. Ltd.*, 719 P.2d 120, 125 (Wash. 1986)).

Here, Defendants summarily argue that FTB&T is a third party beneficiary to the Trading Authorization and Investment Monitoring Agreements. Yet Defendants have not provided any evidence showing that the parties to these agreements intended to provide a direct benefit to FTB&T in its individual capacity. FTB&T signed these agreements in its capacity as trustee for the benefit of the trusts—not for its own benefit. Because Defendants have failed to show that the parties to these agreements intended that FTB&T be a third party beneficiary to and receive a direct benefit from these agreements, FTB&T cannot be compelled to arbitrate its claims under a third party beneficiary theory.

Because FTB&T is a nonsignatory to the Trading Authorization and Investment Advisor Agreements, and because the equitable estoppel and third party beneficiary exceptions do not apply, FTB&T cannot be compelled to arbitrate. Defendants' motions to compel arbitration are therefore denied.[1]

## II.   Motion to Stay

Defendants argue that the court should stay FTB&T's claims pending resolution of the arbitration. Namely, Defendants argue that "a stay would be appropriate because [FTB&T's] claims are premature and may never ripen into real claims" depending on the result of the arbitration. Conversely, FTB&T opposes a stay and argues that FTB&T's indemnity claims are "separate and distinct from the primary issues in the FINRA arbitration." FTB&T also contends that it would be more efficient to allow FTB&T to proceed in this court.

"[I]n some cases, . . . it may be advisable to stay litigation among the non-arbitrating

---

[1] Because the court finds that FTB&T is not bound to arbitrate its claims, the court need not address Defendants' arguments concerning the scope of the arbitration clauses in the Trading Authorization and Investment Monitoring Agreements.

parties pending the outcome of arbitration." *Moses H. Cone*, 460 U.S. at 20 n.23 (quoting *Landis v. N. Am. Co.*, 299 U.S. 248, 254–55 (1936)); *see also Coors Brewing Co. v. Molson Breweries*, 51 F.3d 1511, 1518 (10th Cir. 1995) (holding that "arbitration should proceed in tandem with non-arbitrable litigation"). But litigation can proceed in a "piecemeal" fashion if some claims are arbitrable and others are not. *Coors Brewing*, 51 F.3d at 1518 (citing *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 221 (1985)).

Courts have discretion on whether to stay an action pending arbitration. *Moses H. Cone*, 460 U.S. at 20 n.23. The Tenth Circuit has held that staying a non-arbitrating party's claims "is based upon considerations of judicial efficiency." *Coors Brewing*, 51 F.3d at 1518. Other factors that courts consider include whether a stay would (1) "promote judicial economy;" (2) "avoid confusion and inconsistent results;" and (3) "unduly prejudice the parties or create undue hardship." *UBS Bank USA v. Hawit*, No. 2:09-cv-32-DAK, 2009 WL 2366046, at *2 (D. Utah July 31, 2009) (citing *Nederlandse ERTS-Tankersmaatchappij, N.V. v. Isbarndtsen Co.*, 339 F.2d 440, 441 (2d Cir. 1964)). The party requesting the stay bears the burden of proving that a stay is warranted. *Id.*

Here, Defendants have cited to no authority supporting their argument that a stay is warranted. Although Defendants seem to argue that a stay would prevent inconsistent results in this case, Defendants have failed to show how litigation concurrent with the FINRA arbitration will lead to an inconsistent outcome. Nor have Defendants shown how they will be prejudiced without a stay. Thus, Defendants have failed to demonstrate that a stay pending resolution of arbitration is necessary in this case.

## CONCLUSION

Based on the foregoing reasons, the court DENIES the Defendants' Motions to Compel

Arbitration and to Stay Proceedings Pending Arbitration (Docket 27 & 28).

DATED this 2nd day of June, 2016.

BY THE COURT:

Judge Jill N. Parrish
United States District Court